IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,         3:12-CR-00107-BR
                              (3:16-CV-00452-BR)
               Plaintiff,

                            OPINION AND ORDER

v.

CHRISTOPHER COOL WILMER,

             Defendant.

**BILLY J. WILLIAMS**
United States Attorney
**LEAH K. BOLSTAD**
Assistant United States Attorney
1000 S.W. Third Avenue
Suite 600
Portland, OR  97204
(503) 727-1000

          Attorneys for Plaintiff

**ERICK W. WARD**
Ward Grover, LLP
516 S.W. Thirteenth Street
Suite 201
Bend, OR 97702
(541) 312-5150

          Attorneys for Defendant

**BROWN, Judge.**

This matter comes before the Court on Defendant Christopher Cool Wilmer's amended Motion (#228) to Set Aside Sentence 28 U.S.C. § 2255.

For the reasons that follow, the Court concludes Defendant has failed to establish his claim of ineffective assistance of counsel as to all but one of the issues raised by his Motion.  As to that single issue of what attorney Kenneth Perry specifically advised Defendant as to the effect of the career-offender designation in the government's initial plea offer, the Court **GRANTS** Defendant's request for an evidentiary hearing.


## BACKGROUND

On March 7, 2012, Defendant Christopher Wilmer was charged in an Indictment with Sex Trafficking of a Child in violation of 18 U.S.C. § 1591; Coercion and Enticement of a Minor in violation of 18 U.S.C. § 2422(b); Transportation of a Minor in violation of 18 U.S.C. § 2423(a); Witness Tampering in violation of 18 U.S.C. § 1512(a); Retaliating Against A Witness in violation of 18 U.S.C. § 1513(b); and violation of the Mann Act, 18 U.S.C. § 2421.

On March 21, 2012, attorney Kenneth Perry was appointed to represent Defendant.

On June 20, 2012, Assistant United States Attorney (AUSA)

2 - OPINION AND ORDER

Leah Bolstad emailed Perry and advised him that Defendant's co-defendant, Lantanisha Booker, was going to plead guilty and that she had agreed to testify against Defendant at trial.  AUSA Bolstad advised Perry that "[t]he deadline on [Defendant's] plea offer is **Monday June 25 at 5 p.m.**"  Def.'s Mot., Ex. B at 2 (emphasis in original).  Perry responded via email that he and Defendant had not seen the plea offer.  Perry noted he assumed AUSA Bolstad had mailed the plea offer through the regular mail because he did not "recall seeing any such email.  I will check my unopened office mail." *Id*. at 1.  The following day AUSA Bolstad emailed Perry and advised him that she had sent the plea offer via regular mail with a cover letter in April and that it had not been returned as undeliverable.  *Id*.  Perry did not find the plea agreement in his unopened mail.

On June 29, 2012, the Court held a scheduling conference at the parties' request to discuss an extension of the trial date and a deadline to respond to the government's plea offer.  At the conference the government advised the Court that it had made plea offers to Defendant and to Booker in April and that Booker had accepted the plea offer.  Defendant, however, had not accepted the offer.  Perry advised the Court that he "saw [the plea offer] for the first time about a week" before the conference.  Tr. at 5 (#198).  Perry indicated the government had mailed the plea offer through the regular mail rather than email and that Perry had not

received the mailed copy.  Perry, therefore, requested additional time to review the plea offer with Defendant.  The government did not object to Perry's request.  Perry also stated Defendant needed an extension of the trial date "to go through all of the discovery, to prepare for trial, [and] to get an investigator to look into the backgrounds of some of the individuals involved in the case."  Tr. at 6.  The Court extended the trial date and set the date for Defendant to respond to the government's plea offer to July 31, 2012.

Defendant alleges in his Motion that he attempted "numerous times" to reach Perry in the weeks after the June 29, 2012, hearing to discuss the plea offer "without success."  Defendant asserts he became so concerned that he asked friends and family to attempt to reach Perry.  Defendant asserts he "finally" met with Perry on July 26, 2012, to discuss the plea offer, and Perry advised Defendant to take the offer.  According to Defendant, however, he had "two basic objections" to the plea offer: (1) Defendant had not had time to review discovery and to discuss it with Perry, and, therefore, he did not have enough information to evaluate the offer and (2) Defendant refused to accept the plea offer as long as it "improperly labeled him as a career offender for purposes of U.S.S.G. § 4B1.1(a)."  Defendant asserts Perry, at the July 27, 2012, meeting still "had taken no steps to resolve the Career Offender designation, had not yet applied for

funds to hire an investigator, and could not provide a realistic assessment of the strength of the government's case." Defendant advised Perry that he refused to take the plea offer until the Career Offender issue had been resolved.

Contrary to Defendant's assertion that he could not contact Perry after June 29, 2012, Perry testifies in his Declaration that "within 2 days of the June 29, 2012" hearing he met with Defendant at Multnomah County Inverness Jail for at least two hours. Perry testifies the subject of the "entire meeting" was

> the government's plea offer and the strength of
> the case against him which I analyzed yet again
> for him in detail. Furthermore, I advised
> [Defendant] prior to (and during) our July 1, 2012
> jail meeting that the government notified me that
> [Defendant's] adult niece and co-defendant was
> cooperating with the government. Also, I advised
> [Defendant] that his niece agreed to testify
> against him (along with the victim(s)) at trial.

Decl. of Kenneth Perry at ¶ 14. Perry further testifies he recalls during the July 1, 2012, meeting that Defendant "conced[ed] that the evidence against him was damning," but he insisted he did not qualify as a career criminal. Defendant asked Perry "to press the government to modify it's position on this issue before he would accept a proposed plea." Perry Decl. at ¶ 15. Perry advised Defendant that he would do so, but he reiterated that Defendant needed to be prepared to make a decision by July 31, 2012. Perry testifies he did not urge or otherwise tell Defendant to "take the deal."

5 - OPINION AND ORDER

After Perry's meeting with Defendant on July 1, 2012, Perry discussed Defendant's concerns with AUSA Bolstad regarding the career-criminal designation in the plea offer. Perry agreed to have the United States Probation Office (USPO) review the issue and provide an opinion for the benefit of the parties. The USPO ultimately agreed with the government regarding Defendant's designation as a career criminal, and the government then refused to modify its position on Defendant's career-offender designation.

Perry testifies in his Declaration that he met again with Defendant on July 27, 2012, and shared with Defendant "all of the email correspondence and research." Perry testifies Defendant advised him that because the government would not modify its position regarding the career-criminal designation, Defendant rejected the plea offer.

Perry testifies he spent "close to 4 hours between 2 jail meetings on July 1 and July 27, 2012, with [Defendant] (after the June 29, 2012 hearing) discussing his case and the government's plea proposal." Perry Decl. at ¶ 17. Perry further testifies no one contacted him between July 2 and July 27 regarding any attempts by Defendant to reach him, which includes "the Federal Public Defender's Office to which FDC Sheridan inmates have direct telephone access, any FDC Sheridan counselors, who routinely telephone and message attorneys when clients have

6 - OPINION AND ORDER

issues reaching them, or alleged family members." Perry Decl. at
¶ 17.

Defendant asserts "[a]nother nearly three months would pass
before Perry, on September 17[, 2012] filed a motion challenging
the indictment and moved for a bill of particulars and the
production of evidence." The record, however, reflects the Court
noted at the June 29, 2012, scheduling conference that
September 17, 2012, was the deadline for pretrial motions.

On September 19, 2012, Defendant filed *pro se* a Motion to
Petition the Federal Court for Expert Funds for Indigent
Defendant to Obtain an Investigator. In his Motion Defendant
asserted he had not yet "had an investigator appointed" even
though Defendant's trial was set for October 9, 2012, and
Defendant had requested an investigator from Perry. Defendant
also set out his concern that the "primary witness/victim in my
case show's [*sic*] misconduct before grand jury" and "misconduct
regarding grand jury indictment needs to be investigated."
Defendant stated he could not investigate these things himself
and suggested he was receiving ineffective assistance of counsel
from Perry due to the investigator issue.

Perry states in his Declaration that Defendant's
"accusations of impropriety" caused him to move to withdraw as
defense counsel on September 20, 2012.

On October 4, 2012, the Court held a hearing to address

Perry's Motion to Withdraw.  Under seal and outside of the
presence of the government Perry reiterated that there had been a
breakdown in communication between him and Defendant and that
Perry could not work with Defendant any longer.  The Court
specifically questioned Defendant about his failure to accept the
plea agreement:

> THE COURT:     Can you tell me this, Mr. Perry and
>                Mr. Maher.  What is the status of
>                the plea offer that was made and
>                where are we on that front?  I just
>                want to be sure the defendant is
>                clear on it and Mr. Maher's clear
>                on it.  And then I'll confirm that
>                when the prosecutor's back, so that
>                everybody's on the same page with
>                that.
>
> MR. PERRY:     [Defendant] communicated to me,
>                your Honor, that he rejects the
>                plea offer on no uncertain terms.
>
> THE COURT:     And is that what you wanted done?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT:     All right.  So right now you're
>                accused, presumed innocent, and
>                we're heading down a road that will
>                get you to trial unless something
>                happens to take us off that road.
>                Is that what you're understanding?
>
> THE DEFENDANT: Yes, ma'am.

Tr. (#208) at 9-10.

    Defendant asserts in his Motion that his new counsel, James
Maher, immediately began working with an investigator (which the
Court had approved at the October 4, 2012, hearing) and "in

8 - OPINION AND ORDER

fairly short order, concluded that the Career Offender points under 4B1.1(a) did not apply." According to Defendant, "due to the passage of time and the litigation of several issues surrounding the case, the government's sentencing position had become entrenched. The initial offer of a low-end recommendation of 210 months had been elevated to a range of 360 months to life imprisonment."

The government asserts in its Response that, as noted in the government's May 2013 plea offer, "[D]efendant's offense conduct and criminal history earned him an advisory guideline range of 360-LIFE regardless of whether he was or was not a career offender." *See* Def.'s Mot., Ex. C at 2. According to the government, therefore, "the legal question as to career offender status had very little impact on the final range."

At some point Maher moved for a settlement conference. On May 13, 2013, Judge Papak held a settlement conference that Defendant describes as "short, combative, and ultimately fruitless."

On May 14, 2013, AUSA Bolstad sent Maher a second plea offer that included a low-end sentencing recommendation of 360 months. Defendant states he "[i]nstead . . . opted for open sentencing on all counts."

On May 15, 2013, the Court held a hearing at which Defendant entered a guilty plea to all four counts of the Indictment.

9 - OPINION AND ORDER

After finding Defendant's guilty plea was knowing, intelligent, and voluntary and that there was a factual basis for finding Defendant guilty beyond a reasonable doubt, the Court accepted Defendant's plea and found Defendant guilty.

On November 20, 2013, the Court sentenced Defendant to a concurrent term of 240 months imprisonment on Counts 1-3 and a consecutive term of 60 months imprisonment on Count 4 for a total of 300 months imprisonment.  On November 20, 2013, the Court entered a Judgment.

On November 24, 2013, Defendant filed a Notice of Appeal to the Ninth Circuit.

On January 8, 2015, the Ninth Circuit entered a Final Judgment and Mandate in which it affirmed Defendant's conviction and sentence.

On March 15, 2016, Defendant filed a Motion to Set Aside Sentence on the ground of ineffective assistance of counsel.


## **STANDARDS**

28 U.S.C. § 2255 provides in pertinent part:

> A prisoner in custody under sentence of a court
> established by Act of Congress claiming the right
> to be released upon the ground that the sentence
> was imposed in violation of the Constitution or
> laws of the United States, or that the court was
> without jurisdiction to impose such sentence, or
> that the sentence was in excess of the maximum
> authorized by law, or is otherwise subject to
> collateral attack, may move the court which
> imposed the sentence to vacate, set aside or

correct the sentence.

\* \* \*

If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

Although "the remedy [under § 2255] is . . . comprehensive, it does not encompass all claimed errors in conviction and sentencing. . . . Unless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack [under § 2255] has remained far more limited." *United States v. Addonizio*, 442 U.S. 178, 185 (1979).

**<u>DISCUSSION</u>**

As noted, Defendant moves to vacate his conviction and sentence on the ground that he received ineffective assistance of counsel with respect to the plea offers.  Defendant also requests an evidentiary hearing.

The government asserts Defendant's Motion should be denied as untimely or, in the alterative, denied on the merits.

**I.    Standard**

The Supreme Court has established a two-part test to

11 - OPINION AND ORDER

determine whether a defendant has received constitutionally deficient assistance of counsel. *Premo v. Moore*, 131 S. Ct. 733, 739 (2011). *See also Strickland v. Washington*, 466 U.S. 668, 678, 687 (1984). Under this test a defendant must not only prove counsel's assistance was deficient, but also that the deficient performance prejudiced the defense. *Premo*, 131 S. Ct. at 739. *See also Sexton v. Cozner,* 679 F.3d 1150, 1159 (9th Cir. 2012); *Ben-Sholom v. Ayers*, 674 F.3d 1095, 1100 (9th Cir. 2012).

"To prove deficiency of performance, the defendant must show counsel made errors so serious that performance fell below an objective standard of reasonableness under prevailing professional norms." *Mak v. Blodgett*, 970 F.2d 614, 618 (9th Cir. 1992)(citing *Strickland*, 466 U.S. at 687-88)). *See also Sexton*, 679 F.3d at 1159 (citing *Premo*, 131 S. Ct. at 739). The court must inquire "whether counsel's assistance was reasonable considering all the circumstances" at the time of the assistance. *Strickland*, 466 U.S. at 688. *See also Detrich v. Ryan*, 677 F.3d 958, 973 (9th Cir. 2012). There is a strong presumption that counsel's assistance was adequate. *Strickland,* 466 U.S. at 689. *See also Sexton*, 679 F.3d at 1159.

To overturn a guilty plea, the defendant must show a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). *See also*

12 - OPINION AND ORDER

*Smith v. Mahoney*, 611 F.3d 978, 988 (9th Cir. 2010). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 695. In addition, to establish a claim of ineffective assistance of counsel based on erroneous advice regarding a guilty plea, a defendant "must demonstrate more than mere inaccurate prediction." *Sophanthavong v. Palmeteer*, 378 F.3d 859, 868 (9th Cir. 2004). Erroneous predictions regarding a sentence are deficient "only if they constitute gross mischaracterization of the likely outcome of a plea bargain combined with erroneous advice on the probable effects of going to trial." *Id*.

To prove prejudice "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. *See also Sexton*, 679 F.3d at 1159-60. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 695. *See also Sexton*, 679 F.3d at 1160.

The court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Strickland,* 466 U.S. at 697. *See also Heishman v. Ayers*, 621 F.3d 1030, 1036 (9th Cir. 2010). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."

13 - OPINION AND ORDER

*Strickland,* 466 U.S. at 697. *See also Heishman*, 621 F.3d at 1036.

## II. Analysis

As noted, the government asserts Defendant's Motion is time-barred and/or that it should be denied on the merits.

### A. Defendant's Motion is timely.

The government asserts Defendant's Motion is untimely because it was not filed within one year from the date of the "Final Judgment." Specifically, 28 U.S.C. § 2255(f) provides in relevant part: "A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of-- (1) the date on which the judgment of conviction becomes final." The government notes the final Judgment and Mandate from the Ninth Circuit was entered on January 8, 2015. Defendant, however, did not file his Motion until March 15, 2016, which is one year and 67 days after the Ninth Circuit's final Judgment and Mandate. Thus, Defendant's Motion is untimely.

Defendant, however, points out that the Ninth Circuit has recently reiterated "[i]f the movant pursues a direct appeal to the Court of Appeals but does not file a petition for writ of certiorari with the United States Supreme Court, the conviction becomes final when the time for filing such a petition lapses." *United States v. Gilbert*, 807 F.3d 1197, 1199 (9th Cir. 2015) (citing *Clay v. United States*, 537 U.S. 522, 532 (2003)).

Here Defendant pursued a direct appeal to the Ninth Circuit and did not file a petition for writ of certiorari. Accordingly, Defendant's conviction became final for purposes of the limitation period set out in § 2255(f) when his time to file a petition for writ of certiorari lapsed.

United States Supreme Court Rule 13(1) provides "a petition for writ of certiorari to review a judgment in any case . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment." As noted, the Ninth Circuit entered the final Judgment and Mandate in Defendant's appeal on January 8, 2015. The one-year period for Defendant to file a timely § 2255 Motion, therefore, did not begin to run until March 16, 2015. As noted, Defendant filed his Motion to Set Aside on March 15, 2016, one day short of and within the limitations period. Accordingly, the Court concludes Defendant's Motion is timely.

## B.  Merits of Defendant's Motion

Defendant asserts Perry was constitutionally ineffective with respect to the plea offer because he "did not communicate a plea offer in a timely fashion and did very little to advance the case during the crucial first months of his representation." Defendant asserts he was prejudiced by Perry's alleged failures because the government's initial offer gave Defendant "a significant benefit for early acceptance of

15 - OPINION AND ORDER

responsibility and would have resulted in an 18 ½ year
recommendation. . . . Once the initial offer expired, the
government's recommendation jumped to the range of 360 months to
life and thereafter became utterly immoveable."

In support of his assertion that Perry was
constitutionally ineffective, Defendant contends: "After arguing
for discovery on March 21st and April 3rd no apparent action was
taken for nearly three months." A review of the record, however,
establishes this contention is without merit. Specifically,
March 21, 2012, was Defendant's first appearance at which he was
represented by Assistant Federal Public Defender Francesca
Freccero. Perry was not appointed as Defendant's attorney until
March 26, 2012. On April 3, 2012, Perry had represented
Defendant for only eight days. Perry appeared on Defendant's
behalf to argue against a Motion for Protective Order filed by
the government on April 2, 2012. On April 3, 2012, Perry moved
to continue the April 17, 2012, trial date because he had not yet
received any discovery from the government. The Court set over
the trial for 90 days until July 24, 2012. Defendant has not
established that Perry's performance during this period was
ineffective.

To support his assertion that Perry "did very little to
advance the case during" the period after the April 3, 2012,
conference, Defendant relies on Perry's statements at the

16 - OPINION AND ORDER

June 29, 2012, hearing at which he asked the Court to extend the
trial date.  At the hearing the Court expressed confusion as to
why a month was not enough time for Defendant to prepare for
trial, and Perry responded:  "[Y]our Honor, I need additional
time to go through all of the discovery. . ., to get an
investigator to look into the backgrounds of some of the
individuals involved in the case.  I can go on.  I need more
time."  Tr. (#48) at 6.  Defendant asserts this exchange gives
rise to a number of inferences:

> (1)  In the three months since his last appearance
> on April 3, Perry had not had any contact
> with AUSA Bolstad regarding any aspect of the
> case including the plea agreement.

> (2)  Perry did not timely communicate the April
> 2012 plea offer to Defendant.

> (3)  When Perry was made aware of the plea offer
> on June 20, 2012, he did not communicate the
> offer to Defendant before June 25, 2012, when
> it expired.

> (4)  The fact that Perry stated he had not yet
> gone through the discovery demonstrates even
> if Perry had communicated the initial offer
> to Defendant "in a timely fashion," he would
> not have been able "to discuss its benefits

17 – OPINION AND ORDER

and detriments with any reliable authority."

   (5)   Perry statement that he needed an
         investigator indicates he had not taken any
         steps to retain one in the three months that
         he had been on the case.

Perry, however, testifies in his Declaration that in the months between the April 3, 2012, hearing and the June 29, 2012:

   (1)   He did not receive the government's initial
         discovery until late April 2012.

   (2)   On May 9, 2012, he "spent an entire work day
         reviewing [Defendant's] discovery, doing
         related legal research, and photocopying
         discovery material and statutes to review
         with [Defendant]."  Perry Decl. at ¶ 8.

   (3)   On May 10, 2012, Perry met with Defendant at
         FDC Sheridan and "discussed every aspect of
         [the] case with him" including discovery,
         "strength of the government's case," relevant
         statutes, and the sentencing guidelines.
         Perry Decl. at ¶ 9.

   (4)   On May 18, 2012, Perry met again with
         Defendant at FDC Sheridan and again discussed
         "every aspect of his case and answered all of

his questions." Perry Decl. at ¶ 11. Perry
advised Defendant that he would revisit the
issue of a jury trial or "a plea of some
sort" if Booker cooperated with the
government.

(5) Perry "continued to review discovery in [his]
possession (as well as [discovery] obtained
later) up to the June 29, 2012 Court hearing
and thereafter." Defendant's reliance on
Perry's statement at the June 29, 2012,
hearing that he needed more time to prepare
for trial as an indication that Perry was not
engaged in Defendant's case is misplaced
because Perry "review[s] and re-review[s]
case discovery several times during my
representation of a client before trying a
case." Perry Decl. at ¶ 10.

(6) Perry did not receive the April 26, 2012,
plea offer from AUSA Bolstad until June 21,
2012. In April AUSA Bolstad did not email or
communicate the offer in any manner other
than by regular mail, which never reached
Perry's office. Perry, therefore, did not
fail to communicate the April 26, 2012, plea

offer to Defendant in a timely manner because
Perry did not receive the plea offer until
June 20, 2012.

Perry does not directly address Defendant's assertion
that Perry failed to discuss the plea offer with Defendant in the
four days between the time that AUSA Bolstad provided Perry with
a copy of it via email on June 21, 2012, and the date it was due
to lapse on June 25, 2012. The record, however, reflects on
June 22, 2012, the Court entered a scheduling order "at the
request of counsel" to discuss this matter. The Court infers it
is likely Perry and/or AUSA Bolstad requested the conference as
soon as Perry received the June 21, 2012, email that contained
the plea offer. The Court recognizes it is difficult at best for
defense counsel to schedule a same-day or even a one-day-later
meeting with a defendant at the Sheridan facility (particularly
in light of the fact that June 21, 2012, was a Thursday and the
offer was due to lapse on Monday). The Court, therefore,
concludes Perry did not provide ineffective assistance of counsel
when he did not discuss the plea offer with Defendant between
June 21, 2012, and June 25, 2012, and instead sought more time
from the Court to review the offer.

The Court also concludes Perry's assertion at the
June 29, 2012, hearing that he needed more time to review
discovery does not raise an inference of ineffective assistance

20 - OPINION AND ORDER

of counsel between April 2012 and June 29, 2012.  As Perry notes
in his Declaration, he did not receive initial discovery until
the end of April 2012.  In addition, it is not ineffective
assistance to review and to re-review discovery many times while
counsel is preparing a case.  Moreover, Defendant has not
established any prejudice resulted from Perry's actions between
April and June 29, 2012.  In fact, Defendant obtained an
extension of both the trial date and the time to review the
government's initial plea offer.

Finally, Defendant makes clear that he declined to
accept the initial plea offer at least in part because he
disagreed with the career-offender designation in the plea offer.

The Ninth Circuit has made clear that counsel must
actively assist a client in making an informed decision about a
plea offer in order to provide effective assistance.  *See, e.g.,
United States v. Rivera-Sanchez*, 222 F.3d 1057, 1060-61 (9th Cir.
2000)(counsel is required to communicate the terms of a plea
offer to a defendant and to ensure that the defendant understands
the terms of the offer and its significance); *United States v.
Leonti*, 326 F.3d 1111, 1117 (9th Cir. 2003)(same).  In *Rivera-
Sanchez* the defendant asserted his counsel was ineffective when
he failed to inform him fully of the ramification of his decision
to reject the plea offer.  The Ninth Circuit, however, concluded
defense counsel Aguilar was not ineffective in that regard:

21 - OPINION AND ORDER

>Aguilar spoke with Rivera-Sanchez on several
>occasions regarding the terms of the plea
>agreement.  He explained to Rivera-Sanchez that he
>had a right to a trial, but that under the
>Sentencing Guidelines he would receive a greater
>sentence than that set forth in the plea agreement
>if he rejected it, and that it would be in his
>best interest to accept it.  The record shows that
>Aguilar informed Rivera-Sanchez of the crime
>alleged in the complaint, the sentence he would
>receive under the plea agreement, and that he
>faced a more severe punishment if he didn't accept
>the agreement.

222 F.3d at 1061.

On the other hand, the government correctly asserts "[D]efendant's offense conduct and criminal history earned him an advisory guideline range [at the time] of 360-LIFE regardless of whether he was or was not a career offender." *See* Def.'s Mot., Ex. C at 2.  According to the government, therefore, "the legal question as to career offender status had very little impact on the final range."  It is unclear from the record the extent to which Perry advised and explained to Defendant what impact the career-offender designation might have on Defendant's final sentencing range when Perry discussed the case and the government's initial offer with Defendant.  Accordingly, as explained below, the Court concludes an evidentiary hearing is warranted to resolve this factual issue.

### C.  Evidentiary Hearing Standard

An evidentiary hearing "is not automatically required on every section 2255 petition."  *Baumann v. United States*, 692

F.2d 565, 570-71 (9th Cir. 1982).  A hearing is not required when "the files and records conclusively show that the movant is not entitled to relief," *United States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998), or when the pertinent facts are not in dispute.  *McQueary v. Blodgett*, 924 F.2d 829, 833 (9th Cir. 1991).

"To earn the right to a hearing" the defendant must allege "specific facts which, if true, would entitle him to relief." *McMullen*, 98 F.3d at 1159.  *See also United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (an evidentiary hearing is required only when "the movant has made specific factual allegations that, if true, state a claim on which relief could be granted")(internal quotation marks and citation omitted).  "[B]ald, conclusory or inherently incredible assertions" do not require an evidentiary hearing.  *United States v. Howard*, 381 F.3d 873, 879 (9th Cir. 2004).

As noted, the extent to which Perry explained to Defendant that the career-offender designation would have little effect on his sentencing range is unclear, and, therefore, it is unclear whether Perry advised Defendant regarding the efficacy of continuing to object to the career-offender designation and declining the plea offer.  Defendant asserts he has identified specific facts that make it apparent that "there are competing narratives as to what happened," and, accordingly, "[t]he proper

23 - OPINION AND ORDER

forum for discerning which narrative is more accurate is an evidentiary hearing."

On this record the Court agrees an evidentiary hearing is warranted solely on the issue of what Perry specifically advised Defendant as to the effect of the career-offender designation in the government's initial plea offer.

**CONCLUSION**

For these reasons, the Court **GRANTS** Defendant's request for an evidentiary hearing solely on the issue of what Perry specifically advised Defendant as to the effect of the career-offender designation in the government's initial plea offer.  The Court **DIRECTS** the Clerk to schedule an evidentiary hearing in this matter as soon as practical for the purpose set out in this Opinion and Order.

IT IS SO ORDERED.

DATED this 30th day of June, 2016.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge